1                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF KENTUCKY
2                        LOUISVILLE DIVISION

3      UNITED STATES OF AMERICA,      ) Case No. 3:24-MJ-91-RSE
                                      )
4              Plaintiff,             )
                                      )
5      vs.                            )
                                      )
6      JORDAN A. FAUTZ,               )
                                      ) February 6, 2024
7              Defendant.             ) Louisville, Kentucky

8
                 *****************************************
9      TRANSCRIPT OF COMBINED PRELIMINARY AND DETENTION HEARING
                   BEFORE HONORABLE REGINA S. EDWARDS
10                  UNITED STATES MAGISTRATE JUDGE
                 *****************************************
11

12     APPEARANCES:

13     For United States:        A. Spencer McKiness
                                 U.S. Attorney's Office
14                               717 West Broadway
                                 Louisville, KY 40202
15
       For Defendant:           Frank Mascagni, III
16                               228 South Seventh Street
                                 Louisville, KY 40202
17
       [Defendant present.]
18

19

20

21     Transcriber:             Terri L. Horton, RMR, CRR
                                 Official Court Reporter
22                               133 U.S. Courthouse
                                 501 Broadway
23                               Paducah, KY 42001

24     Proceedings recorded by digital recording.  Transcript produced
       by computer from audio recording that the Court provided to
25     transcriber.

1       (Begin proceedings in open court.)

2           DEPUTY CLERK:  3:24-MJ-91, *United States of America*

3   *vs. Jordan A. Fautz.*  We're here for a preliminary and detention

4   hearing.

5           MR. McKINESS:  Good afternoon, Your Honor.  Spencer

6   McKiness here for the United States.

7           MR. MASCAGNI:  Good morning, Judge.  Frank Mascagni.

8   I'm retained counsel for the defendant, who is present, seated

9   to my right.

10          THE COURT:  All right.  We're here for arraignment and

11  detention.  Let's proceed with --

12          DEPUTY CLERK:  It's preliminary.

13          THE COURT:  Oh, and preliminary as well.

14      Shall we deal with arraignment first?

15          DEPUTY CLERK:  It's a complaint, Judge.

16          THE COURT:  Oh, that's right, so we're not going to do

17  that at all.

18      Are you prepared to go forward on preliminary at this time?

19          MR. MASCAGNI:  I'm prepared to go forward.  I've spoke

20  with counsel.  We're going to do the detention hearing first, if

21  that's acceptable to the Court.

22          THE COURT:  That's fine.

23      Mr. McKiness, is this a case involving a presumption in

24  favor of detention?

25          MR. McKINESS:  Yes, Your Honor, it is.

1          THE COURT:  All right.  In that case, then,

2     Mr. Mascagni, I'll allow you to go forward first.

3          MR. MASCAGNI:  Thank you, ma'am.  You want me at

4     counsel table or at the podium?

5          THE COURT:  The podium is fine.

6          MR. MASCAGNI:  Judge, I have received, which I'm sure

7     you have as well, the pretrial services report.  I'd like to

8     just address that succinctly and then get to some ancillary

9     matters I'd like to proffer to the Court.

10         As the Court can tell, absent the last paragraph of the

11     report, it is very unusual that I, number one -- I guess you've

12     been here 5 years.  I've been here 46.  I never represent a

13     client with zero prior record at age 39, so that's the first

14     thing that grabbed me.  He has no record.  He has been a

15     lifelong member of this community.

16         If I may, his parents -- his father, his mother -- and his

17     wife are sitting in the front row, and I'm going to -- that will

18     become relevant when I ask for some condition or combination of

19     conditions.  They're here to support their son and abide by any

20     conditions or combination of conditions the Court may consider.

21         He's been gainfully employed for the last ten years, got a

22     good employment history, has -- owns his own home.  He's been

23     married for three years.

24         I'll just -- I'll digress backwards.  When I first was

25     retained to represent the defendant, I spent three and a half,

1    four hours with the momma, the daddy, and the wife explaining it

2    to them, the penalties of this case, which we addressed

3    yesterday, that are significant upon conviction, that this will

4    be a long road to hoe, very difficult.  Whether you're innocent

5    or not, the difficulty remains the same.  This federal court

6    system is one that you need a somewhat skilled tactician to

7    maneuver, and they asked me to represent him, and I agreed to do

8    so and have been financially retained.

9        I spoke with my client yesterday and today, and he is not

10   doing well.  I think for many reasons.

11       But since this goes to the two vectors that the Court has to

12   address, which is, is he a flight risk or a danger to the

13   community, I don't think there's any proof or any belief by

14   anybody that he's a flight risk.  So the only issue I think

15   before the Court under 18 U.S.C. 3142 are the factors which

16   we'll address in just a minute.

17       No prior record as a juvenile or as an adult, so obviously

18   there are no bench warrants because he's never been charged with

19   anything.  So all I have is his word and the word of his mom and

20   daddy and wife who tell me that they were happy to pledge

21   themselves as third-party custodians.

22       It appears to me that the -- and I've always had trouble

23   with this protection of society, because as you know, under

24   3142, the last sentence in that is nothing in this overcomes the

25   presumption of innocence.  I never figured out why that's last,

1    if somebody thought about that as an afterthought, as opposed to

2    it being first.  So we walk in here with this presumption even

3    though the Bail Bond Relief Act sort of gives us strictures to

4    follow, which I'll address in just a minute.

5         To cut to the chase on the report is I've never seen one

6    quite like this before they all basically say the same thing.

7    The probation department says that there's an assessment of

8    danger because of what he's charged with, and that's

9    understandable; substance abuse history, he's drank some and

10   smoked some marijuana -- that's not really substance abuse

11   history in my opinion -- his mental health history, which I'll

12   address in just a minute; and then the charges and the safety

13   concerns.  Those are really all the same thing.

14        I think they're saying to the Court, if I can read between

15   the lines, they're recommending he be detained because of what

16   he's charged with, what that says, even though they're

17   allegations, versus perceived future conduct.  So those things

18   really do fit into the conditions and combination of conditions.

19   I think that as a threshold, based on the first three pages of

20   the report, that he is an excellent risk.

21        Now, the thing that I need to address is -- and the Court

22   needs to be aware of it because it's not really fleshed out in

23   the report, and I have some experience with this from prior

24   cases like this I've handled in federal and state court.  He

25   presently, for the last two years, has been seeing a mental

1    health counselor and a doctor, Jennifer Wilson and

2    Dr. Ann Satang, who have been describing him Wellbutrin.  I

3    think the Court's familiar with the drug Wellbutrin.

4        I had a client that allegedly was doing some inappropriate

5    acts or attempted to, and the second -- I hired a psychiatrist

6    who he saw, who is no longer with us -- I'm 46 years; I'm old,

7    Judge -- and he prescribed Wellbutrin, and his abhorrent

8    behavior stopped.  So I'm a believer in it.  Wellbutrin is a

9    relatively new drug to the mental health industry.  That was

10   probably 30, maybe 40 years ago.  I didn't go through the

11   pharmacological history of the drug, but I know it's an amazing

12   drug.  I saw it work personally firsthand.

13       Number two, as I -- I guess not necessarily as a lawyer but

14   as a human being, when I address the issue of danger to society,

15   assuming -- well, not assuming.  There's a ten-page affidavit

16   attached to the complaint which this Court issued an arrest

17   warrant on.  That, as I understand it -- and I could be rebutted

18   by Spencer or the agent if I say something inappropriate.

19       As I've read it several times, my client is charged with

20   going to sites, viewing images, then potentially dispersing them

21   to another place or location, but there is no hint that he

22   represented a danger to another human being -- a child, a

23   girl -- or did he make any solicitation or proffer.

24       Like some cases we've had -- I had -- ten years ago -- I

25   think it was Stephanie -- we had an airline pilot.  After the

1   conversation between the two people, as you know, they

2   classically set up a meeting at the Waffle House after school.

3   Of course, he was talking the whole time to a 25-year-old man,

4   and he was arrested.

5       There's nothing like that in here.  No adventure.  No

6   solicitation.  No overture.

7       So what he's charged with -- and it's against the law;

8   carries a big penalty, 5 to 20 -- is reviewing child pornography

9   at a site.  And depending on how many images -- I only -- you

10  can correct me, Secret -- not secret agent.  That was more smart

11  aleck.  Special agent.  Four or five hundred is what I saw.  Of

12  course, you know, the federal sentencing guidelines, the more

13  the images, the more the range of penalty.  This appears to me

14  to be a limited amount, depending on what the word "limited"

15  means, and he represents in my opinion no direct danger to

16  society.  His danger is a personal danger of viewing these types

17  of images, morphing them, as described by the agent, or

18  photoshopping them, as described in the affidavit.

19      He has been removed from the Catholic school system.  He's

20  no longer employed there.  He was arrested, as I told you,

21  yesterday, Friday morning, about 9:30.  He's been in segregation

22  at the Oldham County jail.

23      And I tell you that not to -- for empathy, but here's the

24  problem:  My understanding of all these years doing this -- that

25  don't mean I'm smarter than anybody else.  I just have more

1    personal cases that are rolling through my mind as I speak.

2    This man is the exact man that does not need to be in custody.

3    He needs to be outside where he can see a psychiatrist and a

4    psychologist and get his Wellbutrin.

5        As you may know, I'm -- and I'm not being condescending.

6    The only thing I know about the penitentiary of all I've been in

7    and sat through, the only optimism I had was that I was going to

8    leave.  But my clients have repeatedly told me the difficulty in

9    getting mental health treatment, especially if he's -- if you

10    detain him, he's going to be shipped to Grayson County, where

11    you have to fill out a form to see a nurse, you have to fill out

12    another form to get some medication, and historically those are

13    not acted on in any reasonable period of time.  Wellbutrin needs

14    to be taken on a daily basis.  He's not had any since -- five

15    days.

16        And without being -- I guess I've already been derogatory.

17    Without being more derogatory to the correctional system, who

18    are overcrowded, undermanned, limited resources, underfunded, if

19    we're addressing the really target of the uniform Bail Reform

20    Act, it is to ensure the community's safety.  It appears to me

21    not a difficult one.  If you put him in jail -- of course, if he

22    stays in jail, the community is safe.  But as a defendant before

23    the Court, he is not going to be able to address whatever mental

24    disease or defect he may have, as it's called in some of the

25    literature.

1    He's been diagnosed as bipolar and anxious in the past.

2    He's had a suicidal ideation in the past and to some degree

3    acted thereon inchoately.  And this is the exact kind of man

4    that needs to be in a private setting to see a psychiatrist and

5    psychologist and to have them monitor or regiment his drug

6    medication to address the bipolar and to address the anxiety.  I

7    have not talked in this limited amount of time to his

8    psychologist or to his psychiatrist.  I'm just repeating what

9    his mom and dad and wife and he have told me.

10    So the question is, assuming that that argument is not

11    flawed in its presentation, How can -- Frank, how can we assure

12    society's safe if given what you say may be correct?  How --

13    what are we going to do the other, whatever, 23 hours a day

14    where he's not seeing a psychiatrist or a psychologist?

15    Well, there are many conditions or combination of conditions

16    the Court can fashion, one of which is third-party custodial

17    custody.  The mom and dad live in a house that they've paid for.

18    He and his wife own a home where, of course, they haven't paid

19    for it but they've been living together for three years as a

20    married couple.  They have no children.  Both parties have

21    agreed to accept the responsibility.  I told them under penalty

22    of you putting them in jail if you set certain conditions and

23    they don't comply.

24    One, the dad and momma's house is probably the best because

25    the daddy's retired.  They can -- we can restrict or make sure

he has no access to any electronic devices, which is the
source -- well, he is the source of the alleged contact, but it
was done through a computer.  So if we can restrict, ban his
being around any computers, laptops, cell phones -- of course,
all that's been done because at the time of his arrest all of
that was seized for potential forensic evidence, I assume.  So
that's been done.  But the daddy and the momma can monitor that
because daddy's always at home 24 hours a day.

     And I've said before -- you've heard me say before, and I
meant it then and I mean it now -- additional safeguards,
whatever restrictions, whether we call it house arrest under
their penalty of violation of a court order -- not that they
need that incentive; they're here to support their son and their
husband -- electronic monitoring to make sure he is only at
home, which that can be done to make sure he doesn't leave his
home; and if there are no devices in his home, he really
represents zero risk to society, theoretically, because of
nonaccess to -- and I don't even know all these things, Judge;
I've got a flip phone; you're talking to the wrong guy -- a
telephone, a smartphone, a computer, a laptop, an iPad.  As my
two-and-a-half-year-old granddaughter says, "Poppa, where's your
iPad?"  I don't even know what an iPad is.  But we can restrict
his use of all those things by them not being there.  So that
appears to me that is a realistic condition or combination of
conditions.

```
 1        I think my paramount concern with this presentation is
 2   selfishly for his mental health going forward and what
 3   deterioration may occur when he doesn't have -- it took him two
 4   years to build a relationship with these two ladies, and I
 5   wouldn't want that destroyed, or the difficulty of ordering or
 6   requesting Wellbutrin and the nurse comes by in three weeks and
 7   gives him an aspirin.  That's a bad joke, but it's -- this ain't
 8   no Holiday Inn with room service, as you know, at Grayson
 9   County.  Times are tough.
10        And will it restrict him from a computer if he's in custody?
11   Absolutely.  Can we create the same environment with this
12   Court's presentation of a series of conditions or combination of
13   conditions as required by Chapter 207?
14        In addition, I've talked to the mom and the dad for multiple
15   hours and his wife, both of which are -- is the 300,000 free and
16   clear?  Is your house paid for?
17        He's got free and clear $300,000 in a residence which he's
18   willing to pledge, which says a lot for people almost as old as
19   me who -- putting their house up -- as you know, that's the only
20   asset as you get older that is really that important to you.
21   The only thing -- one thing more important is your son.
22        And they have access to some funds they have gathered over
23   the years and have saved for retirement.  In addition to that,
24   you could do a $1 million unsecured bond posted by 10 percent,
25   $100,000, which they pledge in addition in some attempt to bring
```

1    some comfort to this Court in compliance with the statutes.

2         And whatever thing else the Court would fashion.  More

3    visitation with probation and parole office to make sure he's

4    going to his appointments, getting his medication, mom and dad

5    to make sure there's no interaction with any children or on a

6    computer or in person.

7         I told them go -- and I don't mean this as silly as it

8    sounds -- go to Kmart and get ten rolls of duct tape tape, duct

9    tape him to his bed at night, release him, and then duct tape

10   him to the breakfast table.  There are ways we can fashion this

11   without him being restricted in a somewhat difficult environment

12   with these charges in a county jail facility, which is housed by

13   county jail.  As you know, these charges represent a lot of

14   things to different inmates and correctional officers, which

15   makes my defense of him difficult for reasons that aren't even

16   legal.  They're just pragmatic.

17        In summation, because the Court doesn't need me to tell you

18   the factors -- I'm going to guess you've done this 300 times.

19   As the Court's well aware, under Title 18, United States Code,

20   3141 and 3142, it directs that you and, more specifically, me

21   address the factors that are brought into consideration as to

22   whether or not a client should be detained.

23        The nature and circumstances of the offense, which are

24   visual and distribution, but not representing a threat to -- no

25   overtures toward any children, boys or girls, or whatever.

1      The weight of the evidence against him.  Right now all we

2    know is the warrant, but there are -- and I believe the

3    affidavit.  I'm not suggesting the officer didn't tell the

4    truth.  As I read it and as you read it before you signed it --

5    or signed the order -- or signed the warrant, it's his viewing

6    and distribution.  No overtures, no represented threat to

7    anybody, other than the damage that's done, of course, to the

8    victim that many times identity goes unknown.  And the

9    photoshopping and morphing that is alleged in the warrant.

10      His character.  He would be a great person applying for a

11    job with marriage, supportive family, wife, no prior record as a

12    juvenile or an adult.  He's been employed for the last ten years

13    steadily.

14      Financial resources.  Although his are now limited, his

15    wife, mother, and father have pledged their home and money to

16    ensure that he will comply with any and all court orders.

17      His criminal history and the nature and the seriousness of

18    the danger to any person or the community that would be posed

19    upon his release.  I think I've addressed that several times.  I

20    think it's something that we can create to make sure this

21    behavior, if committed, does not re- -- does not become

22    recommitted and appears to me, other than tying his hands

23    together in addition to having no electronic devices available

24    to him, we could satisfy that condition that should bring some

25    comfort to the community or to Your Honor as the tribunal which

 1   will make the ultimate decision.

 2        I would ask that this Court fashion a condition or

 3   combination of conditions which the Court would be comfortable

 4   with or probation and parole would be comfortable with to

 5   address the last paragraph in the presentence report -- I'm

 6   sorry, pre-detention report -- or post-detention report --

 7   pretrial services report, and I would ask that this Court give

 8   him the opportunity to comply with these prospective conditions

 9   or combination of conditions and any other conditions the Court

10   thinks appropriate, including a rigorous schedule of personal

11   meetings with his probation officer while this case is pending.

12        Thank you.

13             THE COURT:   Thank you.

14   Mr. Spencer -- or Mr. McKiness.

15             MR. McKINESS:   Your Honor, as you've stated, in this

16   case there is a rebuttal presumption under Section 3142(e)(3)(E)

17   in cases regarding the distribution of child pornography that

18   there is no conditions or combination of conditions that would

19   reasonably assure the safety of any person and the community.

20        Now, the United States' burden is to establish simply by

21   clear and convincing evidence that there's no condition or

22   combination of release that will reasonably ensure the safety of

23   the community.  I'm not going to go into the flight standard

24   because, as defense counsel stated, I don't believe flight is

25   really at issue in this case.

1    But there are several conditions for the Court to consider

2    in reaching the determination on whether the defendant is a

3    danger to the community.  The nature and circumstances of the

4    offense, the weight of the evidence of the dangerousness, the

5    history and characteristics of the defendant, and the nature and

6    seriousness of the danger to any person or the community.  And

7    when looking at those factors, the Court is also to keep in mind

8    that the presumption doesn't go away even if the presumption is

9    overcome, that that is still a factor that should be considered

10   when evaluating the safetiness and whether the defendant should

11   be detained.

12       I'll talk first about the nature and circumstances of the

13   offense.  The nature and circumstances of the charged offenses

14   are deeply troubling and have been really reverberating

15   throughout the community.

16       The defendant was a religion teacher at a middle school and

17   distributed images and videos of a sexually explicit nature of

18   girls and women with the faces of many of the students from his

19   school atop of those bodies of those females while they were

20   engaged in sexually explicit conduct.  In addition to those

21   sexually explicit images and videos Mr. Fautz sent with the

22   likeness of the students on them, Mr. Fautz also distributed

23   images of non-morphed, non-photoshopped images of child

24   pornography.  Mr. Fautz has been engaged in the distribution of

25   these sexually explicit images of child pornography and the

obscene representation of child sexual abuse since at least March of 2022.

The number of victims from the school in which he worked numbers in the dozens.  And, you know, there was a statement made about, you know, not knowing who victims are, and that's generally true in a lot of child pornography cases.  You know, you don't know who some of these children are.

The difference in this case is that these children were students of his.  These children were matriculating at the school where he worked, so he knew them.  And he didn't just know them, but he distributed their images in a sexually explicit nature across the internet with their names attached on many of them, with their school markings in some of them.

So any person receiving these images could see where they went to school and know their names.  And how hard is it to figure out where someone is when you know their name and where they go to school?  That's dangerous, and that goes to the weight of the evidence of dangerousness.

The sheer number of known victims is troubling in this case, but there's also a large number of unknown victims in this case.  And, you know, the government is working hard to try to figure out who some of these people are, but undoubtedly there are victims from the school that we have not yet identified.

And what makes this situation dangerous is because although we don't know who those victims are, Mr. Fautz does.  And if he

1   is released on some conditions, he may interact with some of

2   these students' parents.  Because, you know, Mr. Fautz, by most

3   accounts, was a fairly popular teacher.  People liked him.  And,

4   you know, he could have access to people even on release with

5   conditions.  He doesn't have to go to people because people can

6   come to him if he is not detained.

7       In addition to the child pornography aspect of this case and

8   Mr. Fautz having personal knowledge of these victims and

9   presumably where they live, because he was their teacher and had

10   access to all their information, Mr. Fautz also cyberstalked

11   many of his victims, amassing approximately 97 videos and social

12   media posts from children that he shared in connection with the

13   child pornography that he distributed.

14       There's also information and evidence that Mr. Fautz had

15   inappropriate contact with a student.

16       Your Honor, may we approach?

17          THE COURT:  Yes.

18       (Bench conference on the record outside the hearing of the

19       gallery.)

20          MR. McKINESS:  I don't want to say this part publicly

21   because of the amount of people here today, but Mr. Fautz has

22   been reprimanded at his school for inappropriate contact with a

23   student, and we have seen many images of that student in the

24   images that Mr. Fautz was distributing.  So it is our contention

25   that he is not only dangerous because of computers but also

1   dangerous because of in-person contact with these students.

2        THE COURT:  Is that -- is that something that would be

3   added to any future charges?

4        MR. McKINESS:  It may, depending -- it's not a part of

5   this case because we do not have evidence that he produced the

6   child pornography.

7      But, Frank, we have seen letters from that student that she

8   wrote to Mr. Fautz, and Mr. Fautz was reprimanded by the school

9   for having her in his vehicle unsupervised alone, so ...

10       THE COURT:  And does any of that relate to the

11  cyberstalking?

12       MR. McKINESS:  I have not seen any of her social

13  media, but I have seen many images of her that are sexually

14  explicit that he distributed to the undercover.

15       MR. MASCAGNI:  You're not suggesting -- of course, I

16  let it go.  I should have objected, so I'll object now.  That is

17  not in this ten-page warrant, which you've already beat me to

18  the punch on that.

19     Are you suggesting that he made an inappropriate overture,

20  which I based my argument on the fact none exists?  Are you

21  saying this was sexual or was just some infatuation with the

22  teacher?

23     I mean, let's cut to it.  Did he put his hands on her?  Did

24  he touch her?  Did he say, "Honey, come home with me.  Honey,

25  you want some candy?"  Any of that stuff?

1          MR. McKINESS:  We're investigating.  We can't say, you

2     know, what it is, but we are looking at those images and

3     determining what they are.  But I will also tell you that,

4     again, he was reprimanded for his contact with her, has letters

5     from her, and --

6          THE COURT:  When did this reprimand occur?

7          MR. McKINESS:  It occurred within the last two years,

8     I believe.

9          MR. MASCAGNI:  I'm aware of it, Your Honor.

10         THE COURT:  Okay.

11         MR. MASCAGNI:  And it was not sexual overtures is what

12    I'm -- I get what you're saying, Spencer, but that's not a part

13    of this warrant.  And if you're going to charge him, charge him.

14    But that's not -- that shouldn't be entertained here.  That's my

15    position.

16         THE COURT:  Your objection is noted, and the

17    information [indiscernible].

18         MR. MASCAGNI:  Thank you.

19       (End of bench conference.)

20         MR. McKINESS:  Your Honor, if we move on to the

21    history and characteristics of the defendant, Mr. Fautz, you

22    know, is from the community and he's worked as a teacher for,

23    looks like, ten years, but he's worked where a lot of his

24    victims went to school, which is located just blocks from his

25    house down the street.  And as I noted before, he's had at least

1    one reprimand from the school for inappropriate contact with a

2    student.

3        If we then move to the nature and seriousness of the danger

4    to any person in the community, I think that Mr. Fautz's

5    dangerousness is quite clear and far reaching.  He's a danger

6    both virtually and in real life, because Mr. Fautz was a teacher

7    at the school where a good portion of his victims matriculated.

8    And as I stated before, he had access to their real names, where

9    they live, and actually included some of that information with

10   sexually explicit images of these children that he distributed

11   across the internet.

12       In addition to his online danger, Mr. Fautz is a real-life

13   danger.  As I stated, he lives just a few blocks down the street

14   from the very school that housed a good number of his victims.

15   He's aware of all those victims and even the ones the government

16   has not yet identified.

17       His release would really put a lot of victims and their

18   families in some type of danger, as I've explained a little

19   earlier, because he has intimate knowledge about who these

20   children and victims are.  By being their teacher, he has built

21   relationships with these students.  He's been on their social

22   media accounts and knows things about them that they might not

23   talk about with other folks except for the people that follow

24   them online.  And it's particularly dangerous when the defendant

25   is aware of victims in our community that we have not yet

1    identified.

2        Home confinement or location monitoring would not protect

3    the public from Mr. Fautz.

4        There was some talk about a third-party custodian.  The

5    United States believes any third-party custodian would be

6    inappropriate.  If he were to stay at home just two to three

7    blocks down the street from the school, that seems quite

8    inappropriate, which is where he would live with his wife.  It's

9    also inappropriate because that's the same -- one of the

10   locations where he was distributing child pornography from.

11       If his parents are thought of as third-party custodians, I

12   would say that they would be inappropriate as well.  Appears

13   from my research that Mr. Fautz's mother is employed by

14   St. Stephen Martyr Catholic School as a business administrator,

15   and it seems like an untenable situation to have him in that

16   house where she would go to work presumably on a daily basis and

17   have some sort of access to the victims in this case.  And the

18   inappropriateness there -- I can't say what Mr. Fautz's mother

19   would do.  We don't know.  But I know that the potential to have

20   him in a home with someone that works at that school is

21   inappropriate when he's dealing with these charges stemming from

22   his conduct at the school and the pictures that emanated from

23   that school.

24       And one thing I also want to say about the pictures and

25   dangerousness regarding Mr. Fautz is, you know, he wasn't simply

1      taking, like, head shots from the yearbook.  It may appear that

2      way, but that's not really all that was happening.  Mr. Fautz

3      was taking pictures that were related to the school -- pictures

4      from the hallway, pictures from graduations -- and turning some

5      of those into child pornography.  One example that stands out to

6      me is a graduation photo with three students in it, and each of

7      those students, instead of holding up their graduation

8      certificates, the images there are images of them engaged in

9      sexually explicit conduct.

10          That shows the type of dangerousness that Mr. Fautz is to

11     the community.

12          Thank you, Your Honor.

13              THE COURT:  Thank you.

14              MR. MASCAGNI:  May I have --

15              THE COURT:  I'll let you have the last word, uh-huh.

16              MR. MASCAGNI:  You know, that's wrong -- that's what's

17     wrong with the system, at least when it comes to detention or --

18     I have no idea.  I don't suspect for a moment that Spencer is

19     not a truth-teller, but I've not seen these images.  But the

20     bulk of his argument is -- and there's no -- no -- facts in

21     evidence that he represents a physical real-life threat to these

22     children.  None.  Zero.  Nada.  So that's an overstatement.

23          Here's my other difficulty:  If he is restricted from no

24     contact with human beings -- well, I'll make it up if you

25     fashion one.  Well, it could be all females, children and adult

1    females.  That's fine.  He is no longer employed with the

2    school.  He does not have access to any of this information.  So

3    that is not -- that falls on deaf ears to me.

4        You know, particularly offensive to me -- maybe it's because

5    I'm a human being and I have four children -- is to suggest that

6    his mother will in some kind of way pump information to her son

7    at the own risk she'll go to jail.  These people are here

8    because they love and support their children.  I think it

9    inappropriate for that to have even been said.  And if you want

10   to, which I don't want to, we'll call the mother to the stand,

11   put her under oath, but you know I'll proffer to you she'll

12   comply with anything you say.

13       What?  So we're going to hold it against her because that's

14   the school where he was employed?

15       He is terminated.  He's not welcome on the school grounds.

16   And I assume, I'm guessing, if he violated the electronic

17   monitoring and walked to the school, dare say he would be

18   arrested in two seconds.  And if you fashion the restriction

19   strong enough that he is to remain in the home supervised by two

20   adults, I think that should bring -- quash any concerns that the

21   United States has as it relates to 3142.

22       Thank you.

23           THE COURT:  All right.  I'm going to take a brief

24   recess to review the arguments and the information in the

25   record.  We'll resume at 3:00 p.m.

1        Thank you.

2        (Recess.)

3            THE COURT:  Thank you all for your patience.

4    Here, the Court is presented with a case involving a

5    presumption in favor of detention.  That presumption arises

6    because of the very nature of the charges Mr. Fautz now faces

7    here in federal court, that is, a felony involving minor

8    victims.  In this presumption case, defendant has presented an

9    argument that he has overcome the presumption by proffering his

10   parents and wife as third-party custodians and presenting other

11   conditions which would mitigate both flight and danger to the

12   community.

13       The Court agrees that risk of flight is not an apparent

14   issue in this case.  However, when assessing danger to the

15   community, I come to a different conclusion.  I do find that the

16   presumption in favor of detention has not been overcome when

17   assessing Mr. Fautz's danger to the community.

18       Here, the Court is presented with very serious allegations

19   involving distribution of pornographic images of children.  What

20   makes these allegations all the more disturbing is that

21   Mr. Fautz was in a position of trust and authority as a teacher

22   at the very school where he allegedly procured these images

23   using electronic devices both at his home and his workplace.  He

24   has allegedly used this position of trust and authority to

25   distribute disturbing and damaging images that also contained

1  identifying information regarding some of the minor victims.

2      Defendant's counsel argues that this case does not involve

3  solicitation and that Mr. Fautz was only viewing images, but

4  that does not mute the fact that the very nature of his position

5  as a teacher and employee of the school where he was able to

6  procure those images and alter them with students he personally

7  knew gives rise to great concern about the danger he presented

8  to those students and ready access to their images and personal

9  information.

10      Defendant's arguments that he is suffering from a mental

11  disease and needs medication and treatment also do not mitigate

12  the concerns regarding danger here.  Moreover, the Court may

13  direct the U.S. Marshals to ensure that any medication Mr. Fautz

14  requires be provided to him while in detention.

15      Likewise, I do not find the other conditions suggested by

16  defendant to reasonably assure against danger to be effective

17  here.  Defendant has demonstrated, as the allegations in the

18  criminal complaint suggest, that he appears willing to defy

19  rules to engage in the alleged criminal acts outlined in the

20  complaint.

21      For these reasons, together with the arguments presented

22  today and the findings in the bond report prepared by probation,

23  I find that the presumption has not been overcome.  The United

24  States has demonstrated by clear and convincing evidence that

25  there is no condition or set of conditions to reasonably assure

1    the safety of the community regarding Mr. Fautz, and I find no

2    conditions suitable for his release from detention.  Mr. Fautz

3    will, therefore, remain in the custody of the U.S. Marshals

4    pending further proceedings in this case.

5        Ms. Henry, do we have a date for further proceedings?

6            DEPUTY CLERK:  Will it be presented to the grand jury

7    on the 21st?

8            MR. McKINESS:  Mid-month?

9            DEPUTY CLERK:  Yes.

10           MR. McKINESS:  Yes.

11           DEPUTY CLERK:  We can do arraignment by video on the

12   26th at 1:30.

13           MR. MASCAGNI:  February 26th at 1:30 --

14           DEPUTY CLERK:  Yes.

15           MR. MASCAGNI:  -- by Zoom?

16           DEPUTY CLERK:  Yes.

17           THE COURT:  All right.  I think we have one more item

18   on the agenda.  That is preliminary hearing.

19           MR. MASCAGNI:  Judge, I've discussed it with my

20   client.  Based on the Court's ruling, we'll preserve that right

21   and not exercise it at this time.

22           THE COURT:  All right.  Is there anything more from

23   the United States?

24           MR. McKINESS:  No, Your Honor.

25           THE COURT:  Anything more from defense counsel?

1          MR. MASCAGNI:  No, Your Honor.  Thank you.

2          THE COURT:  All right.  That concludes this matter.

3    Thank you.

4        (End of proceedings.)

5

6                    C E R T I F I C A T E

7        I am an official court reporter for the U.S. District Court
     for the Western District of Kentucky and certify that the
8    foregoing is a true and correct transcript, to the best of my
     ability, of the above pages, of the digital audio recording
9    provided to me by the Court of the proceedings taken on the date
     and time previously stated in the above matter.

10
         ____s/Terri L. Horton_____        _March 27, 2024___
11   Terri L. Horton, RMR, CRR                Date
     Official Court Reporter
12

13

14

15

16

17

18

19

20

21

22

23

24

25